# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF MONTANA

# BILLINGS DIVISION

| | |
|---|---|
| **ROBERT D. SHERMAN,** <br><br> **Plaintiff,** <br><br> **vs.** <br><br> **MICHAEL J. ASTRUE, Commissioner of Social Security,** <br><br> **Defendant.** | **CV 12-35-BLG-CSO** <br><br> **ORDER ADDRESSING <u>SUMMARY JUDGMENT</u> <u>MOTIONS</u>** |

Plaintiff Robert D. Sherman ("Sherman"), seeks judicial review of Defendant Commissioner of Social Security's ("Commissioner") decision denying his application for supplemental security income ("SSI") benefits under Title XVI of the Social Security Act ("the Act"), 42 U.S.C. §§ 1381-1383(c). After the parties consented in writing, this case was assigned to the undersigned for all proceedings. *DKT 7.*

Now pending are the parties' cross-motions for summary judgment. *DKTs 12* (Sherman's motion) and *15* (Commissioner's motion). For the reasons stated below, the Court denies Sherman's

motion, grants the Commissioner's motion, and affirms the Commissioner's decision denying SSI for the period at issue.

## I.   <u>PROCEDURAL BACKGROUND</u>

On February 6, 2009, Sherman filed applications for disability insurance benefits ("DIB") and SSI benefits alleging disability beginning December 15, 1998. *Tr. 32-33, 157-67.* The Social Security Administration ("SSA") denied his application at issue here both initially and on reconsideration. *Tr. 105, 107, 112-14, 120-21.*

On July 8, 2010, an Administrative Law Judge ("ALJ") held a hearing. *Tr. 28-103.* On September 9, 2010, the ALJ issued a written decision. *Tr. 11-23.* The ALJ explained that, at the hearing, Sherman amended his alleged onset date from December 15, 1998, to February 16, 2009. *Tr. 11, 36.* Sherman's earnings records showed that he "acquired sufficient quarters of coverage to remain insured through December 31, 2000." *Id.* Because his amended alleged onset date of February 16, 2009, was subsequent to the date he was last insured for DIB, Sherman dismissed his DIB application. *Tr. 13, 32-33.*

The ALJ next evaluated Sherman's SSI claim. For the reasons

stated in his written decision, the ALJ denied it. *Tr. 13-23.* On

January 24, 2012, the Appeals Council denied Sherman's request for

review. *Tr. 1-5.* The Appeals Council noted that it was doing so having

"considered the fact that since the date of the [ALJ's] decision,

[Sherman] w[as] found to be under a disability beginning August 1,

2011, based on the application(s) [Sherman] filed on December 22,

2010[.]" *Tr. 2.* The Appeals Council concluded that this subsequent

finding that Sherman was disabled did "not warrant a change in the

[ALJ's] decision." *Id.* When the Appeals Council denied Sherman's

request for review, the ALJ's decision became final for purposes of

judicial review. 20 C.F.R. § 416.1481 (2012). This Court has

jurisdiction pursuant to 42 U.S.C. § 405(g).

## II.  <u>STANDARD OF REVIEW</u>

This Court's review is limited. The Court may set aside the

Commissioner's decision only where the decision is not supported by

substantial evidence or where the decision is based on legal error.

*Ryan v. Commr. of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008); 42

U.S.C. § 405(g). "Substantial evidence is more than a mere scintilla,

but less than a preponderance." *Id.* (citing *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n. 1 (9th Cir. 2005) (internal quotation marks omitted)). "It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks and citation omitted).

The Court must consider the record as a whole, weighing both the evidence that supports and detracts from the Commissioner's conclusion, and cannot affirm the ALJ "by isolating a specific quantum of supporting evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (internal quotation marks and citation omitted). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (internal citation omitted).

## III.   <u>BURDEN OF PROOF</u>

A claimant is disabled for purposes of the Act if: (1) the claimant

has a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months, and (2) the impairment or impairments are of such severity that, considering the claimant's age, education, and work experience, the claimant is not only unable to perform previous work, but the claimant cannot "engage in any other kind of substantial gainful work which exists in the national economy." *Schneider v. Commr. of Soc. Sec. Admin.*, 223 F.3d 968, 974 (9th Cir. 2000) (citing 42 U.S.C. § 1382c(a)(3)(A)-(B)).

In determining whether a claimant is disabled, the Commissioner follows a five-step sequential evaluation process. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); 20 C.F.R. § 404.1520(a)(4)(i)-(v).

1. The claimant must first show that he or she is not currently engaged in substantial gainful activity. *Tackett*, 180 F.3d at 1098.

2. If not so engaged, the claimant must next show that he or she has a severe impairment. *Id.*

3. The claimant is conclusively presumed disabled if his or her impairments meet or medically equal one contained in the Listing of Impairments described in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (hereafter "Listing of Impairments"). *Id.* If the claimant's impairments do not meet or medically equal

one listed in the regulations, the analysis proceeds to the fourth step.

4.  If the claimant is still able to perform his or her past relevant work, he or she is not disabled and the analysis ends here. *Id.* "If the claimant cannot do any work he or she did in the past, then the claimant's case cannot be resolved at [this step] and the evaluation proceeds to the fifth and final step." *Id.* at 1098-99.

5.  If the claimant is unable to perform his or her past relevant work due to a "severe impairment (or because [he or she does] not have any past relevant work)" the court will determine if the claimant is able to make an adjustment to perform other work, in light of his or her residual functional capacity, age, education, and work experience. 20 C.F.R. § 404.1520(g). If an adjustment to other work is possible then the claimant is not disabled. *Tackett*, 180 F.3d at 1099.

The claimant bears the burden of proof at steps one through four, but at the fifth step the Commissioner bears the burden of establishing that there is other work in significant numbers in the national economy that the claimant can perform. *Id.* The Commissioner can meet this burden via the testimony of a vocational expert or reference to the Medical-Vocational Guidelines at 20 C.F.R. Pt. 404, Subpt. P, App. 2. *Id.* If the Commissioner is unable to meet this burden then the claimant is disabled and entitled to benefits. *Id.*

## IV.  THE ALJ's OPINION

The ALJ followed the five-step sequential evaluation process in considering Sherman's claim.  First, the ALJ found that Sherman had not engaged in substantial gainful activity since his amended alleged onset date of February 16, 2009.  *Tr. 13.*

Second, the ALJ found that Sherman has the following severe impairments: "degenerative disc and joint disease lumbar and thoracic spines; obesity; osteoarthritis bilateral hands; [and] anti-social personality disorder[.]"  *Tr. 14.*  He also found that Sherman's alleged depression "is either not medically determinable, due to the lack of a formal diagnosis, or is nonsevere."  *Id.*

Third, the ALJ found that Sherman does not have an impairment or a combination of impairments that meets or medically equals any one of the impairments in the Listing of Impairments.  *Tr. 14-16.*

Fourth, the ALJ found that Sherman has the residual functional capacity ("RFC") to:

> alternate between walking, standing and sitting throughout an 8-hour period of time.  This includes walking limited to 2 to 4 blocks (1/4 mile) at one time, standing for up to 30 minutes at one time, and sitting 1 to 2 hours at one time.

He can lift/carry 20 pounds on an occasional basis and 10 pounds on a frequent basis, but should not crawl[ ] or climb[] ladders, ropes or scaffolds, with all other postural activities limited to the occasionally. He is to avoid concentrated exposure to extreme temperatures, primarily cold and [is] to [avoid] vibrations. For the bilateral upper extremities he should not repetitiously do fine motor activities (the smaller the fine motor skill requirement the less ability to do it) with limitations from seldom to occasional. His activities of daily living are none to mild. In social functioning, the claimant can do one-on-one interaction with the public occasionally to frequently, and small numbers of people occasionally, though no jobs that require constant dealing with the public, small or large numbers, and no dealings with large numbers of people at all. He should not work in distracting situations involved with co-workers due to either the numbers of employees or due to the types of activities they may be performing, and minimal supervision with no jobs that deal with "over the shoulder" or constant critical supervision; in concentration, persistence, and pace, routine jobs are acceptable, with occasional to frequent new learning, unskilled to the mid-level of semi-skilled jobs (SVP up to 4 or 5), and based on pain issues, no jobs with high constant focus requirements or high constant stress requirements.

*Tr. 16-17.*

The ALJ also found that Sherman is unable to perform any of his past relevant work as a HVAC technician. *Tr. 21.*

Fifth, the ALJ found that Sherman could perform limited light work in jobs that exist in significant numbers in the national economy

in light of his age (46 years old at the time of his amended alleged onset date, which is defined as a "younger individual"), education (at least high school), work experience, and RFC. *Tr. 21-22.* Consequently, the ALJ found that Sherman was not disabled during the period from his amended alleged onset date of February 16, 2009, through the date of the ALJ's decision of September 9, 2012. *Tr. 23.*

## V.    PARTIES' ARGUMENTS

In seeking either reversal or remand of the ALJ's decision, Sherman argues that the ALJ erred in three principal ways. First, he claims that the ALJ "failed to provide proper weight to the opinion[s] of multiple treating physicians along with their objective test results." *Sherman's Br. in Support of Mtn. for Summary Judgment (DKT 13) at 11-23.* Sherman argues that the ALJ failed to provide proper weight to the opinions of: (1) treating physicians Jillian Verby, M.D., Lowell Quenemon, M.D., Laura Goodell, M.D., and Stephanie Draper, M.D., *id. at 12-15*; and (2) psychologists Marshall McFarland, Ph.D., and Mark Mozer, Ph.D., *id. at 13-14, 21-23.* He also argues that the ALJ erred in failing to give proper weight to objective medical evidence,

including: (1) results from an MRI that reflected the degenerative disc disease pervasive in Sherman's lumbar and thoracic spines, *id. at 12-13*; and (2) x-ray results that also described lumbar and thoracic spine degenerative disc disease, *id. at 14*.

Second, Sherman argues that the ALJ erred in finding that he is not credible respecting the intensity, persistence, and limiting effects of his symptoms. *Id. at 15, 24-31.* He argues that the ALJ erred in: (1) ignoring objective medical evidence to find that Sherman's testimony lacked credibility, *id. at 15*; (2) failing to properly find that the opinions of Sherman's treating physicians support his testimony, *id. at 24-27*; and (3) failing to provide an objective basis for finding Sherman not fully credible, *id. at 27-29*.

Third, Sherman argues that the ALJ erred in accepting the opinion of the vocational expert. *Id. at 33.* Sherman argues that the vocational expert testified that, with his RFC, Sherman could work as a chauffeur and a tank truck driver. But both jobs are semi-skilled jobs that involve driving. Sherman argues that, although he has performed skilled work in the past, it was not as a driver. Thus, he argues, the

ALJ erred in failing to explain "what skills [Sherman] might have and how those skills would transfer to these two driver jobs as required by SSR 82-41." *Id*.

In response, the Commissioner first argues that the ALJ properly "assessed the medical source opinions of record." *Commissioner's Resp. Br. (DKT 16) at 9-14*. He argues that: (1) the record contains no treating source opinions about Sherman's physical abilities during the relevant period between February 2009 and September 2010, *id. at 9*; (2) examining and reviewing source opinions covering the relevant time support the ALJ's ultimate conclusion, *id. at 10*; (3) Sherman was not treated by an acceptable medical source during the relevant period respecting his mental functioning, *id. at 11*; (4) the record contains no opinions from treating sources about Sherman's mental functioning, *id. at 11-12*; (5) the record does contain opinions by examining and reviewing sources respecting his mental abilities that support the ALJ's findings, *id. at 12-13*; and (6) although the Commissioner concedes that Drs. Mozer, McFarland, and Martin concluded Sherman could do unskilled work and did not conclude that he could do semi-skilled work

as the ALJ found, "any error is harmless because the ALJ found that [Sherman] could do both unskilled and semi-skilled work, and then relied on the unskilled jobs of messenger/courier ... garment sorter ... and office machine operator ... to find that [Sherman] was not disabled[,]" *id. at 13-14* (emphasis omitted).

Second, the Commissioner argues that the ALJ properly discounted Sherman's subjective complaints respecting his symptoms and their severity. *Id. at 3-9.* The Commissioner argues that the ALJ did not err in his determination respecting Sherman's credibility because: (1) he found that Sherman "engaged in self-limiting behavior during examinations[,]" *id. at 5*; (2) objective medical evidence showed only minimal changes in Sherman's back and hands inconsistent with his allegations of disability, *id.*; (3) Sherman's symptoms responded to medication, *id. at 6*; (4) Sherman never took medication for mental health and was no longer receiving mental health care at the time of his hearing, *id.*; (5) none of Sherman's treating sources placed restrictions on his activities, *id.*; (6) Sherman's activities of daily living were inconsistent with his allegations of disability, *id. at 6-7*; and (7)

Sherman had a sporadic work history even before his alleged onset of disability, *id. at 7*.

Further respecting the ALJ's credibility determination, the Commissioner also argues that: (1) through his argument that the medical evidence supports his claim, Sherman improperly asks the Court to reweigh the evidence, *id.*; (2) the ALJ's consideration of Sherman's daily activities was reasonable and thus should be affirmed, *id. at 8*; and (3) although Sherman argues that no treating source questioned his physical and mental impairments, no treating source placed any restrictions on Sherman's activities or opined that he had functional limitations, either, *id.*

Third, the Commissioner argues that the ALJ's hypothetical question to the vocational expert that resulted in his conclusion that Sherman could do a range of unskilled work properly included all of Sherman's credible limitations. *Id. at 15.* He also argues that "[a]ny error by the ALJ in additionally finding that [Sherman] could do semi-skilled work is harmless because the ALJ also found [Sherman] could do unskilled work," and listed unskilled jobs that exist in significant

numbers in the national economy.  *Id*.

Sherman replies that: (1) the Commissioner's characterization of the objective medical evidence is inconsistent with the actual evidence, *Sherman's Reply Br. (DKT 18) at 3*; and (2) the Commissioner's arguments respecting Sherman's credibility are based on the faulty assumptions that: (a) Sherman was malingering; (b) his symptoms responded well to prescription medications; (c) his daily activities were more extensive than the evidence supports; and (d) medical records fail to confirm Sherman's claimed limitations, *id. at 3-6*.

## VI.  <u>DISCUSSION</u>

As noted above, the relevant time frame here is the roughly 19-month period between Sherman's amended alleged onset date of February 16, 2009, through the date of the ALJ's decision on September 9, 2010.  The primary issues before the Court are whether substantial evidence supports the ALJ's decision, and whether the ALJ's decision is free of legal error.  The Court is not permitted to re-weigh the evidence.  Considering Sherman's allegations of error and applying controlling Ninth Circuit authority, the Court concludes, as discussed below, that

the Commissioner's decision is based on substantial evidence in the record, and is free of reversible legal error.

## A.   ALJ's Consideration of the Medical Evidence

In evaluating Sherman's claims, the ALJ was required to "make fairly detailed findings in support" of his decision "to permit courts to review those decisions intelligently." *Vincent v. Heckler*, 739 F.2d 1393, 1394 (9th Cir. 1984) (citation omitted).  In doing so, an "ALJ does not need to discuss every piece of evidence" and "is not required to discuss evidence that is neither significant nor probative[.]" *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003) (internal quotations and citations omitted).

Here, the ALJ issued a detailed decision. *Tr. 11-23*.  He reviewed, as discussed further below, his rationale for rejecting certain evidence in his assessment of Sherman's medical records, credibility, and RFC. *Tr. 14-21*.  He also set forth the evidence – which the Court concludes is substantial – that informed and supported his conclusion with respect to Sherman's claim for benefits.  *Id.*  For these reasons, the Court finds unpersuasive the general argument that the ALJ failed to properly

consider evidence favorable to Sherman.

As noted, Sherman argues that the ALJ erred in failing to give proper weight to: (1) the opinions of treating physicians Verby, Quenemon, Goodell, and Draper; (2) the opinions of psychologists McFarland and Mozer; and (3) MRI and x-ray results. *DKT 13 at 11-23*. "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant. At least where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for 'clear and convincing' reasons. [The Ninth Circuit Court of Appeals has] also held that 'clear and convincing' reasons are required to reject the treating doctor's ultimate conclusions. Even if the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject this opinion without providing 'specific and legitimate reasons' supported by substantial evidence in the record for so doing." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (citations omitted).

Having reviewed the record and the parties' arguments, the Court concludes, for the following reasons, that the ALJ did not err in

considering the opinions of Sherman's treating sources and in considering MRI and x-ray results. First, Sherman is impermissibly urging the Court to reweigh the evidence, and to arrive at a conclusion different from that of the ALJ. The Court is not permitted to do so. *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997).

The Court concludes that the ALJ's decision thoroughly describes the treating sources' findings that Sherman now argues the ALJ failed to properly consider. The ALJ included a detailed, chronological description of Sherman's relevant medical history that reflects not only the findings of the treating sources but also the MRI and x-ray results upon which Sherman relies. Respecting Sherman's specific arguments, the ALJ expressly discussed:

* Dr. Verby's May 21, 2010 treatment notes from RiverStone Health reflecting "[p]alpable spasm over the left paraspinal in the sacroiliac region[.]" *Tr. 20.*

* Dr. Quenemoen's March 2, 2010 treatment records, including nerve conduction and electromyography studies, reflecting "very minimal irritability in the left L5

distribution and some very subtle irritation at L3 on the right in the paraspinous region[,]" but the ALJ noted a January 26, 2010 lumbar spine MRI that showed "moderate to severe bilateral neural foraminal narrowing at L5-S1 secondary to disc material and osteophytic changes[.]" *Id.*

* Dr. Goodell's[1] January 19, 2010 treatment notes reflecting: "pain radiation into his left lower extremity that is made worse with walking or movement"; palpable spasm over the paraspinal muscles in the lumbar region; a limited examination because of Sherman's "inability to cooperate/participate"; and the observation that, after the physician left then returned to the room, he found Sherman had moved from a chair to the exam room table where he was resting flat on his back taking a nap. *Tr. 19-20.*

* Dr. Draper's June and July 2009 treatment notes reflecting Sherman's continued back pain and bilateral hand

---

[1]Although this treatment record bears Dr. Goodell's name as the physician with whom Sherman established care, it actually is signed by Robert Wagenaar, M.D. *Tr. 382, 384.*

osteoarthritis and previous records showing "considerable

osteoarthritis with almost complete deterioration of discs at

T4-6[.]" *Tr. 18, 19.*

\* Dr. McFarland's January 26, 2010 mental RFC assessment

concluding that Sherman has an anti-social personality

disorder, but in which she also noted that Sherman "would

do best at work that does not require dealing with the public

or working closely with others." *Tr. 15 (referring to Tr. 388).*

\* Dr. Mozer's January 11, 2010 examining psychologist's notes

describing Sherman's daily drinking, smoking marijuana

with friends, and Sherman's claim that he "is so depressed

he stays in bed and isolates[,]" but finding he has "many

vague complaints" and "evasive" answers, and "very

marginal motivation." *Tr. 15-16.* Dr. Mozer concluded that

Sherman "could function at an unskilled activity consistent

with whatever physical limitations that may exist." *Id. at

16.*

Many of the treatment notes describe the MRI and x-ray results

upon which Sherman relies. The ALJ also detailed them in his written decision. *Tr. 18-20.* While Sherman disagrees with the ALJ's ultimate characterization of these treatment notes, such disagreement does not render the ALJ's consideration of this evidence improper nor does it amount to error. The ALJ expressly noted and discussed all of the foregoing evidence in conjunction with other, substantial evidence reflecting that Sherman had fewer functional limitations than he alleged. He reached a reasoned conclusion supported by substantial evidence. The Court cannot conclude that he erred.

Second, the Court concludes that Sherman mischaracterizes the evidence upon which he relies and overstates the significance of some of it. It is beyond dispute that Sherman has severe impairments including degenerative disc and joint disease in his lumbar and thoracic spines, obesity, osteoarthritis in both hands, and anti-social personality disorder. The ALJ expressly acknowledged these impairments and, as noted above, considered the medical evidence of record that demonstrates these impairments. *Tr. 14.* But "[t]he mere existence of an impairment is insufficient proof of a disability." *Matthews v.*

*Shalala*, 10 F.3d 678, 680 (9th Cir. 1993) (citation omitted).  As noted, the ALJ carefully reviewed and summarized Sherman's medical records.  *Tr. 18-21.*  The records do not indicate a sustained severe loss of function that necessarily would render Sherman incapable of engaging in any substantial gainful activity.  Rather, they indicate that Sherman has certain conditions and limitations, the existence of which the ALJ expressly acknowledged.  *Tr. 14* (noting Sherman's severe impairments detailed above).  The ALJ did not err.

The Court concludes that the ALJ's findings support his determinations respecting the treatment notes of the treating physicians and psychologists, and the objective medical test results.  He offered reasons for his conclusions in accord with the standards set forth above.  Thus, the ALJ did not err.

### B.    ALJ's Assessment of Sherman's Credibility

As noted, Sherman argues that his medical records support his testimony and his claim of disability.  He also claims that the ALJ's determination that his testimony lacks credibility is not sufficiently specific.  *DKT 13 at 15, 24-31.*  The Court disagrees and concludes that

the ALJ did not err in assessing Sherman's credibility.

In *Molina v. Astrue*, 674 F.3d 1104 (9th Cir. 2012), the Ninth

Circuit restated the long-standing standard for assessing a claimant's

credibility as follows:

> In assessing the credibility of a claimant's testimony
> regarding subjective pain or the intensity of symptoms, the
> ALJ engages in a two-step analysis. First, the ALJ must
> determine whether there is objective medical evidence of an
> underlying impairment which could reasonably be expected
> to produce the pain or other symptoms alleged. If the
> claimant has presented such evidence, and there is no
> evidence of malingering, then the ALJ must give specific,
> clear and convincing reasons in order to reject the claimant's
> testimony about the severity of the symptoms. At the same
> time, the ALJ is not required to believe every allegation of
> disabling pain, or else disability benefits would be available
> for the asking, a result plainly contrary to 42 U.S.C. §
> 423(d)(5)(A). In evaluating the claimant's testimony, the
> ALJ may use ordinary techniques of credibility evaluation.
> For instance, the ALJ may consider inconsistencies either in
> the claimant's testimony or between the testimony and the
> claimant's conduct, unexplained or inadequately explained
> failure to seek treatment or to follow a prescribed course of
> treatment, and whether the claimant engages in daily
> activities inconsistent with the alleged symptoms. While a
> claimant need not vegetate in a dark room in order to be
> eligible for benefits, the ALJ may discredit a claimant's
> testimony when the claimant reports participation in
> everyday activities indicating capacities that are
> transferable to a work setting. Even where those activities
> suggest some difficulty functioning, they may be grounds for
> discrediting the claimant's testimony to the extent that they

contradict claims of a totally debilitating impairment.

*Molina*, 674 F.3d at 1112-13 (citations, internal quotations omitted).

Here, as noted, the ALJ found objective medical evidence of underlying impairments that could reasonably be expected to produce the symptoms alleged. Also, the ALJ did not expressly find that Sherman was malingering. He did note, however, evidence of record in which Sherman exhibited "self-limiting behaviors" from which at least one examining physician discerned that Sherman is "capable of doing much more activity than what he displayed on physical examination and he is capable of work-related activities." *Tr. 19.* For the reasons discussed below, the Court concludes that the ALJ ultimately gave specific, clear, and convincing reasons for determining that Sherman was not entirely credible.

The ALJ initially found Sherman credible to the extent that he alleged some medically determinable impairments that could be expected to cause his symptoms and limit, to some extent, his ability to perform work activity. *Tr. 18.* He therefore reduced Sherman's RFC to accommodate those limitations and concluded, with the vocational

expert's testimony, that Sherman could not perform his past relevant work. *Tr. 20-21*. Thus, the ALJ did not entirely reject Sherman's allegations. Rather, the ALJ was careful to parse out those allegations that he found credible from those that he found not credible, as he was required to do. And, the ALJ gave the following specific, clear, and convincing reasons for rejecting other portions of Sherman's allegations and making his credibility determination.

First, the ALJ found that Sherman's work history shows only sporadic work even before his protective filing date. *Tr. 20*. The ALJ noted that this evidence raises the question of whether Sherman's continuing unemployment is actually due to medical impairments and "does not enhance his credibility." *Id.*

Second, the ALJ noted, as mentioned above, that at least one examining physician observed that Sherman "displayed multiple pain and self-limiting behaviors and described [Sherman] to have poor credibility as an examinee[,]" which "also does not enhance [his] credibility." *Id.*

Third, the ALJ observed that a report of record from the Montana

Vocational Rehabilitation Program shows that Sherman's file with that agency was closed because of his failure to cooperate. *Id.* The report indicated that Sherman had received his commercial driver's license, "but then failed to get a job despite job search assistance for approximately 6 months from June 2008 to November 2008; it was noted that [Sherman] did not fully participate in job searching and then failed to participate at all." *Tr. 20-21*.

Fourth, the ALJ noted that Sherman's activities of daily living, although limited, were not strong evidence of disability for two reasons. First, he observed that Sherman's "allegedly limited daily activities cannot be objectively verified with any reasonable degree of certainty." *Tr. 21*. Second, he noted that, even if Sherman's activities are as he alleges, "it is difficult to attribute that degree of limitation to [Sherman's] medical condition, as opposed to other reasons, in view of the medical evidence and other factors discussed[.]" *Id.* Specifically, the ALJ mentioned Sherman's consistent use of marijuana and its impact on activities of daily living, social functioning, concentration, and, as one examining source noted, Sherman's desire to do what he

wants, including "sitting around and getting high."  *Id.*

Fifth, the ALJ mentioned that Sherman's credibility was further called into question for an additional reason.  The ALJ noted that the records reflected that surgery was recommended as an option for Sherman's back condition as early as 2001 and 2002.  But nothing further came from that recommendation at the time and surgery was not again recommended until a surgical consultation was made several years later in May 2010.  *Tr. 21.*

Sixth, the ALJ, acknowledging "significant findings regarding [Sherman's] back and bilateral hands," noted that

> one might expect to see some indication in the treatment records of restrictions placed on [Sherman] by a treating doctor.  Yet a review of the record in this case reveals no restrictions recommended by any treating doctor, but rather, there are recommendations for exercise and weight loss, and [Sherman] testified that his stated limitations are self-imposed.

*Id.*

All of the foregoing observations, which the Court finds to be supported by the evidence of record, indicate that the ALJ properly applied ordinary credibility evaluation techniques in assessing Sherman's credibility.  *Smolen v. Chater*, 80 F.3d 1273, 1283-84 (9th Cir.

1996) (citing *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993)).  As noted, the Court cannot substitute its own interpretation of the evidence for the ALJ's interpretation.  "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas*, 278 F.3d at 954 (citation omitted).  The ALJ did not err.

### C.  ALJ's Consideration of Vocational Expert's Opinion

As noted above, Sherman argues that the ALJ erred in finding that Sherman could perform two jobs – truck driver and chauffeur. Sherman argues that these jobs are semi-skilled and the ALJ failed to explain what skills Sherman has that would transfer to semi-skilled employment.  *DKT 13 at 33*.

Having considered this argument, the Court concludes that, even if this ALJ  finding constitutes error, it is harmless.  *Carmickle v. Commissioner,* 533 F.3d 1155, 1162-1163 (9th Cir. 2011) (relevant inquiry is not whether ALJ would have made different decision absent any error but whether ALJ's decision remains legally valid despite error).  Here, the ALJ found that Sherman, considering his age,

education, experience, and RFC, is capable of performing unskilled work.  The ALJ then listed unskilled jobs that exist in significant numbers in the national economy.  *Tr. 22.*  Thus, if the ALJ did err respecting the semi-skilled work determination, such error was harmless.

## VII.  <u>CONCLUSION</u>

Based on the foregoing,

**IT IS ORDERED** that Sherman's summary judgment motion (*DKT 12*) is DENIED, the Commissioner's summary judgment motion (*DKT 15)* is GRANTED, and the Commissioner's decision is affirmed.

The Clerk of Court shall enter Judgment accordingly.

DATED this 10th day of December, 2012.

/s/ Carolyn S. Ostby_____
United States Magistrate Judge